No. 22-13763-AA

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

SARA WATTS,

Plaintiff/Appellant,

v.

JOGGERS RUN PROPERTY OWNERS ASSOCIATION, INC.,

Defendant/Appellee.

Appeal from the United States District Court
for the Southern District of Florida
Honorable Aileen M. Cannon
No. 9:22-cv-80121-AMC

---

## APPELLANT'S INITIAL BRIEF

---

Jennifer S. Carroll
Florida Bar Number: 512796
Law Offices of Jennifer S. Carroll, P.A.
1001 N. U.S. Highway 1, Ste. 508
Jupiter, Florida 33477
Telephone:  (561) 478-2102
Facsimile:  (561) 478-2143
E-mail:     jcarroll@jscappeal.com
Appellate Counsel for Appellant

**C-1**

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The undersigned attorney for Appellant, Sara Watts, in compliance with FRAP 26.1 and 11th Cir. R. 26.1-1, certifies that the following listed persons and parties have or may have an interest in the outcome of this case or appeal. No publicly traded company or corporation has an interest in the outcome of the case or appeal. These representations are made so that the Judges of this Court may evaluate possible disqualifications or recusal pursuant to the local rules of court:

Sara Watts (Appellant, and Plaintiff below)

Joggers Run Property Owners Association, Inc.[1] (Appellee, and Defendant below)

Judge Aileen M. Cannon (United States District Judge)

Magistrate Judge Bruce E. Reinhart (United States District Magistrate)

Daniel H. Hunt (Counsel for Sara Watts)

Jason Saul Remer (Counsel for Sara Watts)

Remer & Georges-Pierre, PLLC (Counsel for Sara Watts)

Mercy Blasa Pina-Brito (Counsel for Sara Watts)

Mercy B. Pina-Brito, P.A. (Counsel for Sara Watts)

Jennifer S. Carroll (Appellate Counsel for Sara Watts)

---

[1] Hereinafter referenced as "Joggers Run".

Law Offices of Jennifer S. Carroll, P.A. (Appellate Counsel for Sara Watts)

Sadaf Chaudhry (Counsel for Joggers Run)

Cole, Scott, Kissane, P.A. (Counsel for Joggers Run)

Sean Michael Hardwick (Counsel for Joggers Run)

Eric C. Sprechman (Counsel for Joggers Run)

Therese A. Savona (Appellate Counsel for Joggers Run)

**C-2**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Appellant, Sara Watts, by and through undersigned counsel, respectfully requests oral argument in this appeal. The issues on this appeal are significant and are of great public importance: the interpretation and application of key federal statutes, including Section 3604(b) of the Fair Housing Act. 42 U.S.C. § 3604(b); 42 U.S.C. § 1981; and 42 U.S.C. § 1982.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...........................................C-2

TABLE OF CONTENTS...........................................................................................i

TABLE OF CITATIONS ...................................................................................... iii

STATEMENT OF JURISDICTION.......................................................................iv

STATEMENT OF THE ISSUES...............................................................................1

STATEMENT OF THE CASE AND FACTS ..........................................................2

STANDARD OF REVIEW ......................................................................................8

SUMMARY OF ARGUMENT ................................................................................9

ARGUMENT AND CITATIONS OF AUTHORITY ...........................................11

     I.      APPELLANT HAS STATED A VIABLE CAUSE OF ACTION
            UNDER 42 U.S.C. § 3604(B)...............................................................11

     II.      PLAINTIFF ADEQUATELY PLED SPECIFIC VIOLATIONS AND INJURY
            UNDER 42 U.S.C. § 3617 TO WITHSTAND A MOTION TO DISMISS…......22

     III.     PLAINTIFF HAS STATED A CLAIM FOR RELIEF
            UNDER 42 U.S.C. § 1981...................................................................24

     IV.     PLAINTIFF HAS STATED A CLAIM FOR RELIEF
            UNDER 42 U.S.C. § 1982...................................................................26

CONCLUSION.......................................................................................................30

CERTIFICATE OF COMPLIANCE.......................................................................30

CERTIFICATE OF SERVICE ...............................................................................30

# <u>TABLE OF CITATIONS</u>

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)............................................23

*Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir. 2009) ...........................................17

*City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995) ........................11

*City of Memphis v. Greene*, 451 U.S. 100, 123 (1981)...........................................29

*Cox v. City of Dallas, Tex.*, 430 F.3d 734, 740, 746 (5th Cir. 2005).......................12

*Georgia State Conference of the NAACP v. City of LaGrange, Georgia*, 940 F.3d 627 (11th Cir. 2019)........................................................................ 10, 11, 12, 19

*Hill v. Impro Synergies LLC*, No.1:15cv101, 2015 WL 9942045, at *3 n.1 (N.D.Fla. Nov. 25, 2015) ...................................................................................29

*Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1223 (11th Cir. 2016)................ 11, 15

*Jackson v. Okaloosa County*, 21 F.3d 1531, 1539-40 (11th Cir. 1994) .................15

*Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F.Supp.2d 1133, 1150 (S.D.Fla. 2004).............................................................................................27

*Mehta v. Beaconridge Improvement Ass'n*, 432 F.App'x 614, 616-17 (7th Cir. 2011) ...........................................................................................................18

*Moore v. Campden Prop. Tr.*, 816 F.App'x 324, 335 (11th Cir. 2020) .................23

*New Christian Valley M.B. Church v. Board of Educ. Of School Dist. No. 149*, 704 F.Supp. 868, 870 (N.D.Ill. 1989) .........................................................29

*Paradise Gardens v. Secretary, Housing & Urban Development*, 8 F.3d 36 (11th Cir. 1993) ....................................................................................................13

*Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1243 (11th Cir. 2016) ............8

*Richards v. Bono*, 2005 WL 1065141, at *4 (M.D. Fla. May 2, 2005)..................18

*Skinner v. Switzer*, 562 U.S. 521, 530 (2011)........................................................23

*Soto v. City of N. Miami*, No. CV 17-22090-CIV, 2017 WL 4685301, at *15 (S.D. Fla. Oct. 17, 2017) .......................................................................................28

*Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990) ............................................................................................................23

*The Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d 690, 699 (9th Cir. 2009)........................................................................16

*The Sec'y, U.S. Dep't of Hous. & Urban Dev., on Behalf of Joseph A. Labarbera et al., Fair Hous. – Fair Lending* (P-H) P 25, 037, 1992 WL 406531, *1, at *1-6 (HUD ALJ Oct. 15, 1992)..........................................................................14

*Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 212, 211 (1972) ........................11

*U.S. v. Brown*, 49 F.3d 1162, 1166-67 (6th Cir. 1995)...........................................29

*U.S. v. Sea Winds of Marco, Inc.*, 893 F.Supp. 1051, 1055 (M.D. Fla. 1995) . 19, 24

*Wells v. Willow Lake Estates, Inc.*, 390 F.App'x 956 (11th Cir. 2010) ..................13

*West v. DJ Mortg., LLC*, 271 F.Supp.3d 1336, 1351 (N.D.Ga. 2017) ...................14

*Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021)..............26

**Statutes**

§ 720.301(9), Fla. Stat.........................................................................................9, 22

42 U.S.C. § 1981 ............................................................................................. 10, 24

42 U.S.C. § 1981(a)(b)............................................................................................24

42 U.S.C. § 1982 ............................................................................................. 10, 26

42 U.S.C. § 3601 .....................................................................................................11

42 U.S.C. § 3604(b) ...................................................................................... 9, 11, 23

42 U.S.C. § 3604(f)(2) ............................................................................................15

42 U.S.C. § 3617 ............................................................................................. 10, 22

**Rules**

24 C.F.R. 100.600 ...................................................................................................14

24 C.F.R. 100.65 .....................................................................................................14

24 C.F.R. 100.65(b)(2).............................................................................................14

24 C.F.R. 100.65 (b)(4)............................................................................................14

Federal Rule of Civil Procedure 8(a)(2) .................................................................23

## STATEMENT OF JURISDICTION

Review is authorized under 28 U.S.C. 1291 because this is an appeal from a "final decision" of the district court.

## STATEMENT OF THE ISSUES

I.    APPELLANT HAS STATED A VIABLE CAUSE OF ACTION UNDER 42 U.S.C. § 3604(B).

II.    PLAINTIFF ADEQUATELY PLED SPECIFIC VIOLATIONS AND INJURY UNDER 42 U.S.C. § 3617 TO WITHSTAND A MOTION TO DISMISS.

III.    PLAINTIFF HAS STATED A CLAIM FOR RELIEF UNDER 42 U.S.C. § 1981.

IV.    PLAINTIFF HAS STATED A CLAIM FOR RELIEF UNDER 42 U.S.C. § 1982.

## <u>STATEMENT OF THE CASE AND FACTS</u>

Plaintiff, an African American female, purchased a home in the Joggers Run Community on August 14, 2013. [ECF 17, ¶ 8-10] In 2015, Plaintiff became a board member of the Joggers Run Home Owners Association and Plaintiff began experiencing racial discrimination. [ECF 17, ¶ 11-12] Two white board members, Elizabeth Keim, president of the HOA, and Shelly Harsh, an HOA board member, were at the helm of the discrimination. [ECF 17, ¶ 12-13] Elizabeth Keim referred to non-white individuals as "monkeys". [ECF 17, ¶ 13] Shelly Harsh referred to Plaintiff as "Felicia" and directed the statement "bye Felicia" to Plaintiff; such statement is associated with and refers to a Black-African-American crack addict. [ECF 17, ¶ 13]

One of Plaintiff's projects as a member of the HOA board was to reopen the basketball courts for the children in the community. [ECF 17, ¶ 14] The basketball courts had been closed when Plaintiff bought her home, and Plaintiff's proposals to reopen the courts were denied many times due to there being too many "people of color" using the courts. [ECF 17, ¶ 15] Plaintiff was eventually successful in reopening the courts. [ECF 17, ¶ 16]

After the courts were reopened, Shelly Harsh, a white HOA board member yelled at Plaintiff's son to "get the fuck off the court," called him names, and referred to his appearance in a derogatory manner. [ECF 17, ¶ 16-17] Shelly Harsh also

mocked Plaintiff's son when he called his mother about the incident. [ECF 17, ¶ 17] After this incident, the courts were once again closed due to complaints by Shelly Harsh and Elizabeth Keim that there were too many black kids at the court. [ECF, ¶ 17-18] Plaintiff opposed the closing of the basketball courts and the discriminatory statements to the HOA board. [ECF 17, ¶ 19] Plaintiff was removed from her position as a board member for opposing the discrimination. [ECF 17, ¶ 19]

Thereafter, the discrimination against Plaintiff increased. [ECF 17, ¶ 21] At HOA board meetings, Plaintiff was the only African American person present, and she was the only person who was given a 3 minute time limit when directing questions or comments to the board. [ECF 17, ¶ 22] On one occasion, Plaintiff was escorted, without justification, out of the board meeting by police officers. [ECF 17, ¶ 23] Plaintiff was forced to surrender her service dog due to an escalated act from a white neighbor. [ECF 17, ¶ 24] Yet another white neighbor was permitted to keep his Pitbull, a breed that is specifically forbidden from the community. [ECF 17, ¶ 24]

Plaintiff's cars were surveilled, vandalized and towed when white homeowners were never subject to the same treatment. [ECF 17, ¶ 25] For example, Plaintiff's son works late hours and struggled to find available parking spots when returning home from work. [ECF 17, ¶ 26] When Plaintiff discussed the issue with Elizabeth Keim, Keim's response was "I don't have any answers for you." [ECF 17,

¶ 26] The parking rules of the HOA permit residents to hand write a note if a car is to be parked out of a parking spot overnight, and Plaintiff informed Keim of her son's hand-written note for parking his car at the residence after work. [ECF 17, ¶ 27]

Elizabeth Keim was on notice of these parking policies, the lack of available parking spaces, and Plaintiff's son's remedial efforts in writing a note for the dashboard of his car. [ECF 17, ¶ 28] Elizabeth Keim took no remedial action, but instead, Plaintiff's son woke one morning to find that his car had been towed. [ECF 17, ¶ 29] Plaintiff received no warning stickers or notices prior to towing as is required. [ECF 17, ¶ 29] Other white neighbors and board members violated parking rules and did not receive citations or were not subjected to tows. [ECF 17, ¶ 30]

A separate incident occurred during COVID when Plaintiff requested an updated parking sticker for her son's car. [ECF 17, ¶ 31] Plaintiff's son's tag was expired, Plaintiff submitted all required documentation, and Plaintiff informed the HOA of the difficulty of obtaining an appointment at the DMV due to the pandemic. [ECF 17, ¶ 31] Plaintiff asked the HOA to work with her while the situation was being resolved, but instead, Plaintiff's son's car was towed and then sold at auction. [ECF 17, ¶ 31-32]

The discrimination extended beyond Plaintiff and her son to one of Plaintiff's guests. Plaintiff's guest was an African American male, falsely accused of

trespassing and vandalizing cars in the community. [ECF 17, ¶ 33] Plaintiff's guest was forbidden from visiting Plaintiff. [ECF 17, ¶ 33]

Plaintiff received a violation notice from the HOA for "being un-neighborly" when Elizabeth Keim yelled at Plaintiff and tried to issue a no-trespass order on Plaintiff for speaking to her about parking issues. [ECF 17, ¶ 34] The roofs of the homes in the community were in need of repair, and Plaintiff's home was passed over to allow a White board member's roof to be fixed at no charge. [ECF 17, ¶ 36] Plaintiff was charged mysterious fees by the HOA for the repairs and was then given partial credit to cover up the unjustified fees. [ECF 17, ¶ 36]

Despite there being no written notices about having yard sales in the community, Plaintiff received a certified letter for having a yard sale during the pandemic. [ECF 17, ¶ 37] Plaintiff's notice alleged she caused harm to the community by having a yard sale, despite a white neighbor having a yard sale a month earlier and never receiving a notice. [ECF 17, ¶ 37] Plaintiff additionally received another certified letter about items being present in her yard with no description, while a white neighbor, just two doors from Plaintiff, has a hideous yard, including bags of dog feces, and has never received a violation. [ECF 17, ¶ 38] In fact, this neighbor is now a board member of the HOA. [ECF 17, ¶ 38]

Because of this continued discrimination, Plaintiff felt she had no choice but to sell her home due to the racially-motivated harassment she experienced. [ECF 17,

¶ 39-40] Plaintiff had sent multiple emails and filed a police report regarding the systemic racism she experienced. [ECF 17, ¶ 42] Plaintiff filed discrimination complaints with the U.S. Department of Housing and Urban Development (HUD) prior to filing her action in court. [ECF 17, ¶ 45]

## Procedural History

Plaintiff commenced this lawsuit to obtain injunctive and declaratory relief and monetary damages as remedies for the injuries suffered pursuant to violations of federal housing discrimination laws. [ECF 1-4] Defendant removed the action to federal court and Plaintiff filed a First Amended Complaint in February 2022. [ECF 9]

Defendant subsequently moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff had not stated viable claims. [ECF 13] The district court granted Defendant's motion to dismiss and Plaintiff was granted leave to amend her complaint. [ECF 16] Plaintiff filed her Second Amended Complaint on July 14, 2022. [ECF 17] Defendant filed a subsequent motion to dismiss. [ECF 18] The district court granted Defendant's second motion and dismissed Plaintiff's claims based on four findings. [ECF 33] First, it found that Plaintiff had not stated a viable cause of action pursuant to 42 U.S.C. § 3604(b) because the alleged discrimination did not relate to the buying, selling, or renting of a dwelling. *Id*. Second, the district court found that Plaintiff failed to plead specific

rights which were infringed upon by Defendant's discrimination pursuant to 42 U.S.C. § 3617. *Id*. Third, the district court found that Plaintiff's allegations of violated rights pursuant to the Homeowner Association Rules and Regulations were deficient because no specific provisions of these rules were named. *Id*. Because of this alleged deficiency, the district court found that Plaintiff failed to state a claim for relief pursuant to 42 U.S.C. § 1981. *Id*. Finally, the district court dismissed Plaintiff's 42 U.S.C. § 1982 claims, finding that Defendant's discriminatory conduct did not relate to Plaintiff's right to inherit, purchase, lease, sell, hold, and convey real property. *Id*.

## STANDARD OF REVIEW

This Court reviews an order granting a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure *de novo*, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1243 (11th Cir. 2016) (quoting *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008) (per curiam)). "[T]o survive a motion to dismiss, a complaint need only present sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## SUMMARY OF ARGUMENT

The district court erred in dismissing this Plaintiff's complaint for failure to state a cause of action under 42 U.S.C. § 3604(b).

That section of the Fair Housing Act ("FHA") provides that it is unlawful:

> to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b).

Plaintiff, a property owner and contracted member of the homeowners' association, alleged numerous incidents of discrimination against her by the homeowners' association and its board members. Florida law is clear that homeowners' association "membership is a mandatory condition of parcel ownership." § 720.301(9), Fla. Stat. An individual cannot purchase a house in a development governed by an HOA without becoming a contracted member of the association, and subject to all the conditions, privileges, and the provision of services or facilities that are part of that membership. By virtue of the statutory language itself, and the allegations made by Plaintiff in her complaint, Plaintiff has stated a claim under 42 U.S.C. § 3604(b).

Further, the case law is clear that the FHA extends to post-acquisition conditions. *See* cases cited, *infra*. The statute itself makes this clear: the inclusion of

the term "privileges" implicates continuing rights, such as the privilege of quiet enjoyment of the dwelling. And there are many "services and facilities" provided in connection with occupancy of the dwelling after the sale of the home.

It is well-established that the language of the FHA is broad and inclusive and prohibits a wide range of discriminatory conduct. Moreover, it is not limited in application to housing providers, but extends to third-party providers. *See Georgia State Conference of the NAACP v. City of LaGrange, Georgia*, 940 F.3d 627 (11th Cir. 2019).

Plaintiff adequately pled specific violations and injury to withstand a motion to dismiss with respect to Plaintiff's claims pursuant to 42 U.S.C. § 3617.

With respect to Plaintiff's claim under 42 U.S.C. § 1981, Plaintiff's allegations of discrimination in connection with her contractual rights under the HOA Rules and Regulations is sufficient to withstand a motion to dismiss.

The district court also erred in dismissing Plaintiff's 42 U.S.C. § 1982 claim. The "right to hold property" encompasses an individual's "use of property." The "right to hold" property encompasses one's quiet enjoyment of that property and the right to be free from discriminatory acts while holding that property. *See* cases and analysis cited at pages 22-25, *infra*.

## ARGUMENT AND CITATIONS OF AUTHORITY

I.  **APPELLANT HAS STATED A VIABLE CAUSE OF ACTION UNDER 42 U.S.C. § 3604(B).**

The Fair Housing Act ("FHA") was enacted in 1968 and its policy is to provide fair housing throughout the United States. 42 U.S.C. § 3601. Congress has deemed this policy "to be of the highest priority." *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 212, 211 (1972) (internal citations omitted). The Supreme Court has accordingly deemed this policy be "broad and inclusive" and the reach of the FHA demands that its provisions be afforded a "generous construction." *Id.* at 209; *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995); *see also Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1223 (11th Cir. 2016) ("[T]he Supreme Court has repeatedly instructed us to give the Fair Housing Act a broad and inclusive interpretation." (internal quotation marks omitted)).

The Eleventh Circuit specifically recognized in *Georgia State Conference of the NAACP v. City of LaGrange, Georgia*, 940 F.3d 627, 632 (11th Cir. 2019) that "the language of the FHA is broad and inclusive," "prohibits a wide range of conduct," "has a broad remedial purpose," and "is written in decidedly far-reaching terms." *Id.* at 631-32. *See also* 42 U.S.C. § 3604(b).

Section 3604(b) of the FHA provides that it is unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a

11

dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

Appellant believes the district court misinterpreted and misapplied this Court's prior opinion in *Georgia State Conference of the NAACP v. City of LaGrange, Georgia*, 940 F.3d 627, 632 (11th Cir. 2019).

*LaGrange* itself did not address discriminatory enforcement of provisions relating to homeowners' associations, discriminating acts by an HOA and its board members, or the constructive eviction that Plaintiff experienced in the instant case. Nor did it address intentional, discriminatory actions perpetuated against certain residents in the use or enjoyment of their property as protected by the statute.

But *LaGrange* specifically recognized that Section 3604(b) can extend to post-acquisition discrimination. *See* discussion at pages 16-18, *infra*.

In the *LaGrange* opinion, this Court looked to other circuits' interpretation of the statute. The opinion cited *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 740, 746 (5th Cir. 2005) for the principle that § 3604(b) may encompass the claim of a current owner or renter for attempted and unsuccessful discrimination relating to the initial sale or rental – "*or for actual or constructive eviction*." *Id*. at 632 (emphasis added).

Section 3604(b) of the FHA applies equally to prospective owners and tenants *as well as* current residents: application of the statute is not restricted to the moment of sale or rental but extends, and continues, while a plaintiff resides in the housing.

12

In *Wells v. Willow Lake Estates, Inc.*, 390 F.App'x 956 (11th Cir. 2010), plaintiffs brought an action pursuant to Section 3604(b) and Section 3604(f)(2) (disability discrimination), alleging that their mobile home community selectively enforced its regulations in a discriminatory manner based on national origin and disability discrimination. *Id.* at 957. This Circuit reversed the dismissal of the district court and held that plaintiff had standing to pursue her claims when she was already a tenant and had not yet been evicted. *Id.* at 959-60.

In *Paradise Gardens v. Secretary, Housing & Urban Development*, 8 F.3d 36 (11th Cir. 1993) (unpublished) this Court affirmed the holding of a HUD ALJ that a housing community's rules applied to current residents, after the date of acquisition of the property. The ALJ's opinion outlined the facts of the case: plaintiffs owned and/or leased properties in the defendant's community; the defendant's community was an "adult community" that prohibited residents under the age of 16; plaintiffs were permitted to purchase and/or lease residences in the community despite having children under the age of 16; and plaintiffs subsequently were denied access to common areas of the community, including the swimming pool, and plaintiffs experienced ongoing hostility because they had young children. *The Sec'y, U.S. Dep't of Hous. & Urban Dev., on Behalf of Joseph A. Labarbera et al., Fair Hous. – Fair Lending* (P-H) P 25, 037, 1992 WL 406531, *1, at *1-6 (HUD ALJ Oct. 15, 1992) The ALJ concluded that the community's discriminatory treatment in denying

access to common areas was a violation of the FHA, and the ALJ made no distinction as to the discriminatory actions relating to the sale or lease of the residence or occurring after the plaintiffs were residents of the community. *Id*. at *8-16.

Notably, HUD has authority to interpret the FHA and has determined that discrimination provisions in 3604(b) apply *whenever housing discrimination occurs* and are not limited to the moment of sale or rental. 24 C.F.R. 100.65 prohibits "[f]ailing or delaying maintenance or repairs of sale or rental dwellings because of race, color, religion, sex, handicap, familial status, or national origin" and "[l]imiting the use of privileges, services or facilities associated with a dwelling because of race, color, religion, sex, handicap, familial status, or national origin of an owner, tenant, or a person associated with him or her." 24 C.F.R. 100.65(b)(2), (b)(4). HUD regulations also prohibit hostile housing harassment which includes conduct targeted at people who have already obtained the housing in connection with which they experience discrimination. 24 C.F.R. 100.600; *West v. DJ Mortg., LLC*, 271 F.Supp.3d 1336, 1351 (N.D.Ga. 2017) (relying on 24 C.F.R. 100.600 in holding housing harassment actionable under 42 U.S.C. 3604(b)). HUD has consistently interpreted the FHA as applying to discrimination unrelated to the sale or rental of a dwelling.

Courts have applied Section 3604(b) and Section 3604(f)(2), addressing disability-based discrimination, similarly. The merits of Section 3604(f) claims have

consistently been considered when brought by "current residents." *Hunt v. Aimco,* 814 F.3d 1213 (11th Cir. 2016). In *Hunt*, the plaintiff alleged that landlord discriminated against her and her adult son on the basis of disability and landlord threatened eviction or non-renewal of the lease. *Id*. at 1218. Plaintiff and her son had been residents of the apartment complex for six years. *Id*. at 1218-19. In discussing that the landlord had effectively made housing "unavailable" to plaintiffs, this Court held "that the FHA protects renters not only from eviction, but also from discriminatory actions that would lead to eviction but for an intervening cause." *Id*. at 1223. This Court reversed the dismissal of the complaint by the district court for failure to state a claim. *Id*. at 1227.

Section 3604 has generally been held to apply to current residents in general. *Jackson v. Okaloosa County*, 21 F.3d 1531, 1539-40 (11th Cir. 1994) held that a current resident had standing to challenge a housing authority's decision as to the siting of new public housing, because she alleged that the decision would affect the conditions of her continuing residency in the neighborhood. Specifically, the Court recognized cognizable harms specific to her status as an existing resident including "the loss of important benefits from interracial associations" and the segregative effect of more public housing. *Id*. at 1539 (quoting *Trafficante*, 409 U.S. at 210).

Other circuits have reached similar conclusions. In *CCCI*, the Ninth Circuit considered a claim under section 3604(b) based on discrimination in the provision

of municipal services to unincorporated, predominantly Latino neighborhoods. *The Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d 690, 699 (9th Cir. 2009). The district court had dismissed plaintiffs' 3604(b) claim, finding that the statute was limited to "discrimination in the provision of services in connection with the acquisition of a dwelling," rather than discrimination in the provision of services to existing homeowners and renters. *Id*. at 711. The Ninth Circuit reversed, holding that "the FHA reaches post-acquisition discrimination." *Id*. at 713. In analyzing the statute, the Ninth Circuit stated:

> [T]he statutory language does not preclude all post-acquisition claims. . . . The inclusion of the word "privileges" [in the statutory text] implicates continuing rights, such as the privilege of quiet enjoyment of the dwelling. While defendants argue that "the provision of services or facilities in connection therewith" refers only to services or facilities provided at the moment of acquisition in connection with the sale or the rental, this is hardly a necessary reading. There are few "services or facilities" provided at the moment of sale, but there are many "services or facilities" provided to the dwelling associated with the occupancy of the dwelling. Under this natural reading, the reach of the statute encompasses claims regarding services or facilities perceived to be wanting after the owner or tenant has acquired possession of the dwelling.

*Id*.[2]

---

[2] Note that this Court in *LaGrange* cited to this case to support its view that Section 3604(b) applies to post-acquisition conduct. But this Court did not agree that the FHA would apply to the provision of law enforcement services. This Court stated that such services are provided "regardless of whether an individual has housing and

The court further reasoned that protecting current residents was an appropriate interpretation of the statute because "limiting the FHA to claims brought at the point of acquisition would limit the act from reaching a whole host of situations that . . . would constitute discrimination in the enjoyment of residents in a dwelling or in the provision of services associated with that dwelling." *Id*. at 741. Examples of discriminatory acts that would not be governed by the statute if such a narrow reading was employed include preventing a person with disabilities from using laundry facilities, refusing maintenance based on tenants' national origin, sexually harassing tenants, and raising rent based on tenants' religion. *Id*. (citations omitted).

The Seventh Circuit has rejected a narrow reading of Section 3604(b) as well, holding that "the FHA's protections are [not] left on the doorsteps as owners enter their new homes" *Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir. 2009), and limiting protections in the statute to discrimination at the time of sale or rental "would only go halfway toward ensuring availability of housing" and "clearly could not be what Congress had in mind when it sought to create 'truly integrated and balanced living patterns.'" *Id*. (quoting *Trafficante*, 409 U.S. at 211). Limiting the statute's application to the sale or rental of a dwelling could mean that "[a] landlord would be required to rent to an African-American but then, the day after he moves

---

are not required in order to obtain housing." 940 F.3d 627, 633. *See* analysis at pages 17-21, *infra*.

in, could change all the locks and put up signs that said, "No blacks allowed." *Id*. at 776. "That clearly could not be what Congress had in mind when it sought to create 'truly integrated and balanced living patterns.'" *Id*. (citations omitted) The court held that the statute may reach post-acquisition discriminatory conduct that "makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction." *Id*. (citations omitted).

In *Mehta v. Beaconridge Improvement Ass'n*, 432 F.App'x 614, 616-17 (7th Cir. 2011), plaintiff's Section 3604(b) claims were reinstated by the Seventh Circuit when those claims alleged that defendant "doled out privileges and services to white homeowners, while withholding them from [the plaintiff's] family[;] . . . failed to maintain their home's aluminum siding, roof, sump pump, sidewalk and parking space, while providing those services to white homeowners; and . . . engaged in preferential treatment when maintaining the grounds of the subdivision. . . . These allegations suffice to state a plausible claim of discrimination." *Id*. at 616-17.

The district courts in Florida have also followed the path of the circuit courts. In *Richards v. Bono*, 2005 WL 1065141, at *4 (M.D. Fla. May 2, 2005), the Court held "the plain language of Section 3604(b) should be read . . . as prohibiting unlawful discriminatory conduct after a tenant has taken possession of the dwelling." *United States v. Sea Winds of Marco, Inc.*, 893 F.Supp. 1051, 1055 (M.D. Fla. 1995) held that allegations that landlord imposed discriminatory rules against and made

derogatory remarks to Latino tenants and subjected them to selective monitoring stated a claim under Section 3604(b).

The case law demonstrates that the FHA applies to current owners, and relief from discrimination is not limited to immediate circumstances surrounding the sale or rental of a dwelling. To hold otherwise would undermine the policy behind the FHA as set forth in the foregoing cases.

Plaintiff adequately alleged that Defendant engaged in discriminatory conduct in the privileges associated with Plaintiff's occupancy, ownership and quiet enjoyment of her home; and in the provision of services or facilities in connection therewith.

<u>*LaGrange Analysis*</u>

In *Georgia State Conference of the NAACP v. City of LaGrange, Georgia*, 940 F.3d 627 (11th Cir. 2019), this Court held:

> [B]ecause there is no temporally limiting language, the plain language of § 3604(b) may, under certain circumstances, encompass the claim of a current owner or renter for discriminatory conduct related to the provision of services, as long as those services have a connection to the sale or rental of the dwelling. Indeed, this interpretation is consistent with our decision in *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1263-65 (11th Cir. 2002), in which we held that the evidence was sufficient to support a jury verdict in favor of the plaintiff's claim that the defendants violated § 3604(b) when they evicted her based on familial status. In so holding, we did not make any distinction based on the fact that the plaintiff's claim arose from post-acquisition conduct. *Id.*

19

We are not alone in our conclusion that § 3604(b) can reach post-acquisition conduct. Several of our sister circuits have recognized that § 3604(b) may, under certain circumstances, apply to claims of discrimination that arise from post-acquisition conduct. *See Bloch v. Frischholz*, 587 F.3d 771, 779-81 (7th Cir. 2009) (reversing a grant of summary judgment in favor of a condominium association, and concluding that condominium owners could sue the association under § 3604(b) for alleged discrimination that took place after they bought their unit); *Comm. Concerning Cmty. Improvement ("CCCI") v. City of Modesto*, 583 F.3d 690, 713 (9th Cir. 2009) ("We conclude that [§ 3604(b)] reaches post-acquisition discrimination."); *Cox v. City of Dallas, Tex.*, 430 F.3d 734, 740, 746 (5th Cir. 2005) (concluding that § 3604(b) did not apply to a claim that a city violated this statute by failing to prevent dumping at an illegal site because such conduct was not connected to the sale or rental of a dwelling, but noting in dicta that "[t]his is not to say that § 3604(b) applies only if the plaintiff was precluded from finding housing. [Rather,] § 3604(b) may encompass the claim of a current owner or renter for attempted and unsuccessful discrimination relating to the initial sale or rental or for actual or constructive eviction."); *Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982) (holding that a landlord who threatened to evict tenants if they continued to receive black guests violated "the express terms" of § 3604(b)).

940 F.3d at 632.

*LaGrange* itself did not address discriminatory enforcement of provisions relating to homeowners' associations, discriminatory acts by an HOA and its board members, or the constructive eviction that Plaintiff experienced in the instant case. Nor did *LaGrange* address intentional, discriminatory actions perpetuated at residents in their use or enjoyment of their property as protected by the statute.

20

*LaGrange* did discuss a "nexus" or "connection" standard when addressing post-acquisition "services". In *LaGrange*, this Court found that basic utility services have a sufficient nexus to the sale or rental of a dwelling and fall within the scope of Section 3604(b). 940 F.3d at 634. The court reasoned:

> Specifically, it is common knowledge that in connection with buying or leasing a dwelling, a resident must obtain basic utility services, such as water, gas, and electricity for the home.

940 F.3d at 634.

In rejecting the Ninth Circuit *CCCI*'s expansive view of "services" to include the "timely provision of law-enforcement personnel," the Eleventh Circuit in *LaGrange* reasoned that those specific services are provided "regardless of whether an individual has housing and are not required in order to obtain housing." 940 F.3d at 633.

In the present case, contrary to the district court's finding, there is the sufficient nexus contemplated by the court in *LaGrange*.

Plaintiff specifically alleged in her complaint that she was a property owner and a contracted member of the Joggers Run Homeowner Association. [ECF 17, p.2, ¶ 8]

Under Florida law, "membership [in the homeowners' association] is a **mandatory** condition of parcel ownership." § 720.301(9), Fla. Stat. (emphasis added). And it is common knowledge that in connection with buying a home in a

development managed by an HOA, the parcel owner must contract with the HOA at the time of sale – this is required in order to obtain the housing. And attendant to such membership is the entitlement to the benefits, privileges, services, and facilities provided through the HOA.

Under the plain language of Section 3604(b) of the FHA, Plaintiff has stated a viable cause of action under the FHA.

## II. PLAINTIFF ADEQUATELY PLED SPECIFIC VIOLATIONS AND INJURY UNDER 42 U.S.C. § 3617 TO WITHSTAND A MOTION TO DISMISS.

The district court found that Plaintiff failed to plead specific rights which were infringed upon by Defendant's discrimination pursuant to 42 U.S.C. § 3617. "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

A claim brought pursuant to this section requires proof (1) that plaintiff exercised or enjoyed any right granted or protected by Sections 3603-3606; (2) that defendant's conduct constituted interference; and (3) a causal connection between the two. *Moore v. Campden Prop. Tr.*, 816 F.App'x 324, 335 (11th Cir. 2020). In granting Defendant's motion to dismiss, the only deficiency found by the district

court was that Plaintiff failed to allege which rights under Sections 3603-3606 were violated by Defendant's conduct. [ECF 33, p. 7]

The district court erroneously reached this conclusion as Plaintiff's Section 3617 claim is predicated on her right to be free from discrimination in the terms, conditions, or privileges of her dwelling that are granted in 42 U.S.C. § 3604(b). As previously established, Plaintiff, as a current resident, has rights granted by Section 3604(b) which form the basis of her Section 3617 claim. Again, at this stage of pleading, nothing more is required from Plaintiff.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, **not an exposition of [] legal argument[s].**" *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (emphasis added). "On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). A motion to dismiss should only be granted where plaintiff has failed to provide **some basis** for the allegations that support the elements of his claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In *U.S. v. Sea Winds of Marco, Inc.*, 893 F.Supp. 1051, 1055 (M.D. Fla. 1995), defendants argued that plaintiff failed to specify in detail the discriminatory acts by

the individual named defendants and that the complaint should be dismissed. The court disagreed and found that allegations of selective monitoring of plaintiffs based on national origin and derogatory comments made towards plaintiffs was sufficient to satisfy the "short and plain" statement requirement of federal pleadings. *Id*. The court specifically found that the plaintiffs were Hispanic persons protected under the FHA; and the alleged conduct, taken as true in the complaint, allowed an inference of intentional discrimination. *Id*. at 1055.

## III.   PLAINTIFF HAS STATED A CLAIM FOR RELIEF UNDER 42 U.S.C. § 1981.

The district court also found that Plaintiff failed to adequately plead her rights under the HOA Rules and Regulations were violated because no specific provisions of these rules were cited. The district court erroneously concluded that Plaintiff failed to state a claim for relief pursuant to 42 U.S.C. § 1981. "All persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens. . . . For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)(b).

The district court noted that Plaintiff was not claiming interference with the making of a contract, but rather interference with the enjoyment of the benefits, privileges, terms, and conditions of the contractual relationship Plaintiff had with

24

the HOA. [ECF 33, n.1] The district court erred when it found Plaintiff made "a generalized allegation that Plaintiff was 'discriminated against based on alleged violations of the contractually agreed covenants and restrictions of the community Homeowner Association Rules and Regulations. But the SAC (second amended complaint) never identifies which covenants and restrictions (i.e., the "benefits, privileges, terms, or conditions") of the Homeowner Association Rules and Regulations were violated by Defendant's actions." [ECF 33, p. 9]

Plaintiff provided the court with a short and plain statement of the discriminatory actions and referenced the "community Homeowner Association Rules and Regulations" that provided the basis for her contractual relationship. [ECF 17, p. 2, 11, 14] As stated in Plaintiff's Second Amended Complaint:

> Plaintiff was discriminated against based on alleged violations of the contractually agreed to covenants and restrictions of the community Homeowner Association Rules and Regulations.

[ECF 17, p. 11, ¶ 63] [ECF 17, p. 14, ¶ 82]

> Plaintiff, a black female African American individual, is a property owner and contracted member of the Jogger's Run Community.

[ECF 17, p. 2, ¶ 8]

Notably, the district court cited no authority for its finding that specific contract provisions be stated specifically in the complaint. The only law provided by the district court is the requirements for a Section 1981 claim, which only requires

that plaintiff allege (1) intentional racial discrimination (2) that caused a contractual injury. [ECF 33, p. 8] citing *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). Plaintiff has done just that: she has alleged specific instances of discriminatory behavior that infringed upon the contractual rights provided by the HOA Rules and Regulations. Nothing more was required. At this stage of pleadings, the court is obligated to accept plaintiff's claims as true and determine, if such claims are proven, is plaintiff entitled to relief. Accepting the allegations of Plaintiff's complaint as true, and construing these allegations in the light most favorable to the Plaintiff, as recognized under the standard of review, Plaintiff would be entitled to relief.

## IV.    PLAINTIFF HAS STATED A CLAIM FOR RELIEF UNDER 42 U.S.C. § 1982.

Plaintiff's final claim involved violations of 42 U.S.C. § 1982, which guarantees all citizens the same right as is enjoyed by white citizens "to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. §1982. To state a claim, plaintiff must show (1) the plaintiff is a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned activities addressed in the section [right to inherit, purchase, lease, sell, hold, and convey property]. *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F.Supp.2d 1133, 1150 (S.D.Fla. 2004) The district court below cited to *Lawrence*

for the elements of this cause of action, but its continued reliance on *Lawrence* for its decision was in error.

First, the *Lawrence* case was disposed of at the summary judgment stage which provides both a factually and procedurally distinguishable basis for analysis. *Id*. at 1136. *Lawrence* is also factually inapposite. In *Lawrence*, plaintiffs were an African American couple who experienced racial discrimination from a neighbor. *Id*. at 1137. The plaintiffs reported the discrimination to the HOA and eventually sued the HOA when remedial measures were not taken. *Id*. The Court found that plaintiff's claims pursuant to the FHA could not be maintained at the summary judgment stage, and noted that the FHA does not "become some all purpose civility code regulating conduct between neighbors." *Id*. at 1143. "The Civil Rights Act, like the FHA, was not intended as a springboard to bring neighbor disputes into a federal forum." *Id*. at 1150 (citing *Stackhouse v. DeSitter*, 620 F.Supp. 208, 209, 211 (N.D.Ill. 1985) (section 1982 should not be read so broadly as to encompass a black resident's claims that after his family exercised their right to rent an apartment free of racial discrimination, their neighbor attempted to drive them out of the previously all-white neighborhood through acts of violence and property damage) (other citations omitted).

The statutes did not apply in *Lawrence* because the discriminatory behavior was strictly between neighbors. There was no allegation of discriminatory action on

the part of the HOA or anyone in which plaintiffs had contractual or property rights. In the instant case, Plaintiff has suffered discrimination (and infringement of her property rights) by the HOA (governing authority) itself and board members of the HOA. *Lawrence* cannot be the basis for dismissing Plaintiff's claims under Section 1982.

The district court also cites to *Soto v. City of N. Miami*, No. CV 17-22090-CIV, 2017 WL 4685301, at *15 (S.D. Fla. Oct. 17, 2017) for the proposition that the third element of the claim requires plaintiff to allege that they were "deprived of the right to buy or sell property." *Soto* does not support the district court's conclusion. In *Soto*, plaintiff brought the action on behalf of her adult, disabled son. *Id*. at *1. Plaintiff's son had an altercation with the police which eventually led to Plaintiff's son being committed to an institutionalized treatment facility. *Id*. at *3. Plaintiff brought multiple claims, including a claim pursuant to 42 U.S.C. § 1982, alleging that as a result of the police's discriminatory treatment of her son, defendants had made housing unavailable to her son and he had to relocate. *Id*. In analyzing the claim, the district court found there was no allegation that plaintiff's son sought to inherit, lease, sell, hold, or convey real property at all. *Id*. at *15.

The district court's reliance on *Soto* in the instant case is misplaced. Not only are the facts completely distinguishable in *Soto*, in that plaintiff's son in that case had no rights at all in the claimed dwelling, but *Soto* actually supports the application

of Section 1982 to Plaintiff in the present case. *Soto* cites to several cases: *City of Memphis v. Greene*, 451 U.S. 100, 123 (1981) (holding that the threshold inquiry under section 1982 must focus on the relationship between the conduct at issue and the property interests of the respondents); . . . *Hill v. Impro Synergies LLC*, No.1:15cv101, 2015 WL 9942045, at *3 n.1 (N.D.Fla. Nov. 25, 2015) (noting that it seems that a 1982 plaintiff . . . must identify some property interest of their own that has been impaired); *New Christian Valley M.B. Church v. Board of Educ. Of School Dist. No. 149*, 704 F.Supp. 868, 870 (N.D.Ill. 1989) (holding that the individual plaintiffs cannot allege that the defendants denied them the right to lease and hold real property unless they show that they attempted to do so); *U.S. v. Brown*, 49 F.3d 1162, 1166-67 (6th Cir. 1995) (holding that the legislative history of 1982 supports the proposition that a Jewish person's *use of property is protected under Section 1982*). (emphasis added)

These cases, relied upon in *Soto*, provide for relief when plaintiff proves a right to property in association with the wrongful behavior. The "right to hold" property encompasses a minority's "use of the property". *See Brown*, 49 F.3d at 1166-67, *supra*. The "right to hold" property encompasses quiet enjoyment of that property and the right to be free from discriminatory acts while holding that property.

Again, Plaintiff has provided allegations to support her claims at this stage of the proceedings, and the law supports Plaintiff's ability to move forward with her claims.

## CONCLUSION

Based on the foregoing, Appellant respectfully requests that this Court REVERSE the district court's Order Granting Defendant's Motion to Dismiss.

## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with FRAP 32(a)(7)(B) that this brief complies with the type-volume limitation specified in Rule 32(a)(7)(B). Specifically, it contains 7,818 words in the Brief.

/s/Jennifer S. Carroll
Jennifer S. Carroll

## CERTIFICATE OF SERVICE

I certify that on this 13th day of January, 2023, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, for which an electronic service copy will be furnished through the CM/ECF system upon the following: Therese A. Savona, counsel for Appellee, at therese.savona@csklegal.com.

/s/Jennifer S. Carroll
Jennifer S. Carroll